396 A.2d 1237

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Robin A. BERMAN and Michael T. McStay.**

Superior Court of Pennsylvania.

Submitted April 11, 1977.

Decided Dec. 28, 1978.

Robert L. Eberhardt, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Edgar M. Snyder and Stanton D. Levenson, Pittsburgh, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

JACOBS, President Judge:

█ This Commonwealth appeal[1] is taken from an order of the court below suppressing evidence seized in the warrantless search of an automobile. The sole issue for our determination is whether the lower court erred in sustaining appellees' suppression motion. For the reasons that follow, we hold it did, and therefore reverse the order entered below.

Some time before February 6, 1976, Allegheny County Police arranged a sale of five pounds of marijuana to one of their undercover agents. A reliable police informant set up the sale at her residence for approximately 9:30 P.M. on February 6, 1976, and in conjunction with this plan, six detectives maintained surveillance of the residence at that time. As planned, two men who were to "check out" the premises before the sale arrived at approximately 9:00 P.M. in an automobile registered to Berman. Forty-five minutes after the two men entered the residence, Berman came out of the house and drove away. When he returned a short time later, he re-entered the dwelling, and Officer Ransley, the prospective purchaser, was admitted to the house by the informant. Berman then told Ransley that one pound of marijuana was available for $200.00, and after the deal was closed, the officer identified himself and arrested Berman. The remaining officers were admitted to the residence, whereupon the informant related that she had overheard that "Mike" was outside in Berman's car with the rest of the marijuana. Detective Duffy went outside to inspect the car, and in doing so, shined his flashlight about the interior of the vehicle, and discovered a closed tool box on the back seat. Duffy did not then enter the vehicle, but proceeded to move a police vehicle behind the Berman car. At that time, he saw McStay, whom he did not then know, walking on the opposite side of the street.

1. This appeal is properly before us because the question presented is purely one of law, and the order appealed from would terminate prosecution for possession of the marijuana found in the car. Record at 62A. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963); *Commonwealth v. Mader*, 253 Pa.Super. 58, 384 A.2d 974 (1978).

After Duffy returned to the informant's residence, the policemen and those arrested came out of the house, at which time they saw the Berman car pulling away from the curb. Two officers stopped the car and removed its driver, McStay, removed the tool box, searched it, and discovered four pounds of marijuana. McStay was then arrested.

Before trial, appellees' counsel filed motions to suppress the marijuana seized from the tool box. After a hearing in the court below, an order was entered granting the motions, and this appeal followed.

Automobiles, being of a highly mobile nature, are not subject to the same strict requirements of search and seizure as an individual's home would be. *Commonwealth v. Clelland,* 227 Pa.Super. 384, 323 A.2d 60 (1974). However, we must be mindful of the fact that "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire,* 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (1971). Nevertheless, we are persuaded that sufficient probable cause existed in the case at hand to justify a warrantless search of the automobile in question.

In *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the Supreme Court established the constitutional difference between houses and cars for Fourth Amendment purposes, and held that an immediate search without a warrant is constitutionally permissible where there is probable cause to search an automobile stopped upon the highway, the car is movable, the occupants are alerted, and the contents of the car may never be found again if a warrant must be obtained. Given these exigent circumstances delineated in *Carroll,* the rule has evolved that a warrantless search of an automobile is permissible where the probable cause arises in an unforseen way shortly before the opportunity for search, and at a time when the automobile is mobile so that the opportunity for search is fleeting. *Chambers v. Maroney,* 399 U.S. 42, 50–51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Commonwealth v. Maione,* 227 Pa.Super. 239, 244, 324 A.2d 556 (1974).

In the case before us, probable cause arose from a combination of use of the vehicle for delivery of the marijuana, and the informant's statement to the officers that the remainder of the substance was in the car. The requirement of a fleeting opportunity for search was satisfied when the police officers came out of the house and saw the automobile being driven away. In fact, testimony at the suppression hearing indicated that had it not been for an accumulation of snow on the road, the car would have been driven away. In light of this one unsuccessful attempt to flee, and the existence of independent probable cause to believe that evidence of a crime was concealed within the vehicle, we hold that the suppression court erred in invalidating the warrantless search of the vehicle. *See Commonwealth v. Jones,* 233 Pa.Super. 461, 335 A.2d 789 (1975).

The suppression court found probable cause to stop the vehicle, but held the warrantless search unreasonable in the absence of exigent circumstances. Appellees argue that once the vehicle was stopped and its driver was arrested, the police should have sought a search warrant. This alternative was specifically rejected in *Chambers,* where the Court said:

> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.
>
> . . . In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. 399 U.S. at 52, 90 S.Ct. at 1981.

Furthermore, we are not persuaded that the exigency was vitiated by the presence of several police officers on the scene. One effort had already been made to secure the vehicle before McStay's attempted escape with the remaining contraband. The fact that some officers may have been available to secure a search warrant while others guarded the vehicle does not render the police conduct unreasonable.

Where an automobile is the subject of the search, the possibility of its movement and the concomitant disappearance of the contraband is a more critical factor than a count of the number of agents present who could be dispatched to a warrant issuing authority. *United States v. Menke,* 468 F.2d 20, 23 (3d Cir. 1972).

Appellees urge us to recognize a distinction between warrantless seizures and warrantless searches subsequent thereto, particularly where the item or area to be searched is a container. Relying on *U. S. v. Soriano,* 482 F.2d 469 (5th Cir. 1973), they contend that although the police could seize the tool box in this case, they could not search it without the interversing scrutiny of a neutral and detached magistrate. We cannot agree. On rehearing of *Soriano* en banc, the Court of Appeals reversed, holding that the warrantless search of suitcases removed from an automobile trunk was not unreasonable, given the fact that justification which existed to search the vehicle "encompassed the search of containers in the vehicle which could reasonably be employed in the illicit carriage of the contraband." *U. S. v. Soriano,* 497 F.2d 147, 149 (5th Cir. 1974). *See also U. S. v. Valen,* 479 F.2d 467, 471 (3d Cir. 1973).[2]

**2.** *U. S. v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), does not compel a contrary result. In *Chadwick,* railroad officials who observed two persons loading a footlocker on a train to Boston contacted the police when they noticed that the container was leaking talcum powder, a substance often used to mask the odor of marijuana. Federal agents in Boston arrested three individuals as the locker was being loaded into the trunk of a car, and opened the locker ninety minutes later at the federal building, without consent or a warrant. The Court affirmed suppression of the large quantity of marijuana found in the locker, holding that the search was not justified under either the automobile exception to the warrant requirement or as a search incident to a lawful arrest. We need not decide whether the rationale of *Chadwick* applies here, for the search in the case at bar occurred more than sixteen months before *Chadwick* was decided. And under the standards set forth in *U. S. v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), we agree with three of the Courts of Appeals that *Chadwick* applies prospectively only. *U. S. v. Berry,* 571 F.2d 2 (7th Cir. 1978); *U. S. v. Reda,* 563 F.2d 510 (2d Cir. 1977); *U. S. v. Montgomery,* 558 F.2d 311 (5th Cir. 1977). *Contra U. S. v. Schleis,* 582 F.2d 1166 (8th Cir. 1978).

For the foregoing reasons, the order of the court below is reversed and the cases remanded for trial.

SPAETH, J., concurs in the result.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.