454 A.2d 35

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Steven C. ZOCK.**

Superior Court of Pennsylvania.

Argued Nov. 10, 1980.

Filed Dec. 10, 1982.

Petition for Allowance of Appeal Granted March 29, 1983.

Richard A. Hernan, Assistant District Attorney, Warren, for Commonwealth, appellant.

Joseph C. Barnhart, Tionesta, for appellee.

Before PRICE, CAVANAUGH and HOFFMAN, JJ.

PRICE, Judge:

The court below granted appellee, Steven Zock, a new trial after a jury found him guilty of possession of marijua-

na with intent to deliver. The new trial was granted because evidence admitted against Zock was allegedly the product of an illegal search by police officers.

On May 16, 1979, two Pennsylvania State Police Troopers went to the residence of William Jackson for the purpose of serving an arrest warrant on him for a drug charge. Upon arrival, Trooper Mechling observed appellee Zock, whom he knew, walking rapidly into Jackson's residence. Trooper Rain was met at the front door by Stephen L'Angelo who advised Trooper Rain that he was in charge of the premises and that Jackson was not at home. L'Angelo permitted the officers to enter the premises to search for Jackson.

In an upstairs bedroom, the troopers found in plain view twenty-two clear plastic bags, each containing about one pound of marijuana. The officers seized the marijuana, placed it in the police car, and secured the premises, ordering the approximately ten persons in the house to gather on a front porch—terrace area. Corporal Lynn arrived to aid the officers, and Trooper Rain was dispatched to apply for a search warrant to search the remainder of the premises. Lynn positioned himself to watch one door and Mechling positioned himself to watch the only other door. While the premises were thus secured pending arrival of a search warrant, appellee, a friend of Trooper Mechling, asked Mechling for permission to clean up the yard. Mechling granted Zock's request.

Shortly thereafter, several of the remaining individuals gathered around Trooper Mechling and kept his attention. Mechling then noticed Zock running away from the officers and into the woods. Mechling saw that Zock was carrying three suitcases, one of which he recognized as having been in the bedroom from which the marijuana in plain view had been seized. The officer chased and apprehended Zock in the woods. Mechling noticed that there was a ladder leading to a second floor bedroom at the rear of the building from which Zock had run toward the woods. Zock and the three suitcases were returned to the porch—terrace area to await the arrival of Trooper Rain with the search warrant.

When Trooper Rain returned, the warrant was served and the suitcases were opened. The suitcases contained a total of twenty six clear plastic one pound bags of marijuana. Appellee was then arrested for possession with intent to deliver marijuana.

After the court below refused his motion to suppress the marijuana found in the suitcases, Zock was found guilty in a jury trial. Subsequently, the lower court granted a new trial after reconsidering and determining that the contents of the suitcases should have been suppressed. The court found the search of the suitcases to be outside the scope of the warrant issued for the Jackson premises. It was also determined that there were no exigent circumstances to excuse the police from obtaining a second warrant before searching the luggage taken from Zock.

The Commonwealth attempts to justify the officers' actions on two grounds. The first contention is that the suitcase search would not have required a warrant because it was conducted incident to a lawful arrest. We disagree. However, the second allegation is that the search was permissible because it was within the ambit of the warrant issued to search the Jackson premises. We agree and for this reason reverse the grant of a new trial.

We first address the contention that the search would be proper even if not authorized by a warrant, because it was incident to a lawful arrest. Warrantless searches of areas immediately accessible to an arrestee are permitted for the protection of the arresting officer or to prevent the destruction or concealment of evidence. *Commonwealth v. Long,* 489 Pa. 369, 374, 414 A.2d 113, 115 (1980). Under the present circumstances Trooper Mechling had probable cause to believe the suitcases Zock was running off with contained evidence of illegal drug trafficking. *See Commonwealth v. Levesque,* 469 Pa. 118, 364 A.2d 932 (1977). Nevertheless, the limit of the trooper's authority in such a situation is to seize the suitcases if, as under the present circumstances he does not find it necessary to conduct an immediate search to protect himself or prevent

the destruction of evidence. (*See* R.R. 35–36). Once under police control, luggage normally may not be searched unless a search warrant has been issued. *See United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). A warrantless search of the bags would have been unlawful in the present case, the facts of which are similar to those of *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) in that:

> the officers had seized the luggage and had it exclusively within their control at the time of the search. Consequently, there was not the slightest danger that [the luggage] or its contents could have been removed before a valid search warrant could be obtained.

*Id.* at 762, 99 S.Ct. at 2592 (quotation marks and citation omitted). Accord *United States v. Chadwick*, 433 U.S. at 15, 97 S.Ct. at 2485, *Commonwealth v. Timko*, 491 Pa. 32, 37–38, 417 A.2d 620, 622–23 (1980). The Commonwealth when asserting an exemption from the requirement for a search warrant bears the burden of establishing its actions come within the exemption. *Arkansas v. Sanders, supra, Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), reh den. 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969), *Commonwealth v. Timko, supra.* The Commonwealth has not carried the burden of establishing the search was valid as incident to a lawful arrest, in light of the general rule that luggage lawfully seized during an arrest, and thereafter placed wholly within police control can be searched only after a warrant is obtained.[1]

1. Recently, the United States Supreme Court expanded the scope of warrantless searches based on probable cause to search an automobile, holding that such probable cause permits a warrantless search of all of a car's contents, *including* luggage and other containers found in the car. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The Court, however, noted the distinction between *Ross,* where police had probable cause to search a car in which luggage happened to be located, and cases such as *Chadwick,* (and the instant case) in which police have probable cause to search only particular articles of luggage. In the latter cases, there is no lessened expectation of privacy, nor any other exigency inherent in the characteristics of personal luggage, that can justify a warrantless search after a lawful seizure. 456 U.S. at 815–16, 102 S.Ct. at 2168, 72 L.Ed.2d at

■ We thus reject the contention that even if not authorized by a warrant, the search was valid as incident to a lawful arrest. The Commonwealth's second contention is valid, however: the search was authorized because it was within the scope of a warrant issued for the premises from which Zock absconded with the bags.

■ Appellee Zock and the court below have correctly noted that a search warrant issued for the premises or effects of a particular person cannot be extended by police officers to include a search of things not belonging to or under the control of that person. *Commonwealth v. Platou*, 455 Pa. 258, 263, 312 A.2d 29, 32 (1973) cert. denied 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). In *Platou, id.*, officers with a warrant to search the premises of an individual also searched suitcases belonging to a guest who happened to be present when they arrived. In *Platou* the police were told by the guest that the suitcases belonged to him, and not to a resident of the premises. The present case is clearly distinguishable from *Platou*, however, because the police were never informed that the property belonged to anyone other than the owner of the premises. They initially saw the suitcases in a bedroom from which they had seized marijuana in plain view. At that time, and at all times until the search warrant arrived, the officers could properly assume the suitcases were a part of the Jackson premises. In *Commonwealth v. Sellers*, 236 Pa. Superior Ct. 191, 344 A.2d 689 (1975), we stated that after obtaining a search warrant for the premises police are expected to search any bags and pocketbooks lying around, as well as dresser drawers, closets and clothing. "It would

588. The Court thus preserved the rule that a warrant must be obtained before such particular items of luggage are searched, noting that "a person's expectations of privacy in personal luggage are substantially greater than in an automobile," 456 U.S. at 811, 102 S.Ct. at 2165, 72 L.Ed.2d at 585 (quoting *United States v. Chadwick, supra*), and further stating that "the practical problems associated with the temporary detention of luggage during the period of time necessary to obtain a warrant are significantly less than those associated with the detention of an automobile." 456 U.S. at 811, 102 S.Ct. at 2166, 72 L.Ed.2d at 585.

have been a dereliction of duty for the officers to fail to inspect areas and objects which were apparently part of the premises covered by the warrant and under the control of [the occupant]." *Commonwealth v. Sellers,* 236 Pa.Superior Ct. at 195, 344 A.2d at 691. The luggage in the present case, like the handbag in *Sellers,* was presumptively subject to search because the police: "could have logically determined that the pocketbook was part of the general contents of the room." 236 Pa.Superior Ct. at 196, 344 A.2d at 691. A separate search warrant would be required for the luggage only if the police were first clearly notified that the bags belonged to a guest and not to a resident of the premises, as in *Platou, supra.* Therefore, in the instant case, if Zock had expressly stated to the officers that the suitcases were his, a second warrant would have been required for a search of the bags.

Zock contends, however, that by merely attempting to abscond with the suitcases from secured premises, he identified himself by a "nonverbal act" as their owner, so that the premises warrant no longer justified a search of the bags. We disagree, because it is far from clear that Zock's running away with the suitcases identified him as their owner. It is quite possible that Zock did not own or possess the luggage at any time except when he was running away from the house. Zock may instead have been attempting to help a friend who owned the drugs, believing he could prevent their discovery by taking advantage of his friendship with Trooper Mechling. It is also possible that Zock acted on the mistaken belief that without any other connection to the contraband he would be incriminated by his mere presence in a house where marijuana is found. We need not speculate further as to why Zock would attempt to remove marijuana from a house about to be searched by state troopers. Whatever his motive, appellee has not shown any more than that he possessed the suitcases while running from the house. This act alone did not preclude the police from reasonably concluding that at all other relevant times the suitcases were a part of the prem-

ises to be searched. In *Platou, supra,* it was "undisputed" that the resident of premises for which the warrant was issued "had no control over" the effects searched. 455 Pa. at 263, 312 A.2d at 32. "Moreover, the police before undertaking their search were on notice that the suitcases belonged to [a guest]." *Id.*

Because Zock did not expressly claim the drug-filled suitcases were his and not a part of the premises, the officers were permitted to assume under the circumstances that the premises warrant continued in force and authorized a search of the bags. Thus the evidence was properly admitted because it was within the scope of a search warrant issued for the premises.

Accordingly, the order granting appellee's motion for a new trial is reversed and the case is remanded for sentencing. Jurisdiction is not retained.

HOFFMAN, J., files a dissenting statement.

HOFFMAN, Judge, dissenting:

I respectfully dissent. The police here should have obtained a second warrant before searching appellant's luggage. After appellant returned from the yard, the luggage was firmly under police control, and no exigent circumstances compelled the immediate warrantless search as they might in an automobile case. *See Commonwealth v. Davis,* 270 Pa.Superior Ct. 202, 411 A.2d 250 (1979) (Commonwealth must prove exigent circumstances by clear and convincing evidence). Moreover, the majority draws contrary inferences from the same facts. Appellant's nonverbal act of carrying the suitcases was the basis of his being convicted of possessing their contents. Yet the majority holds that this act was not enough for purposes of seeking a warrant to notify the police officers that appellant laid claim to the suitcases as his. The lower court refused to accept such reasoning, and so do I. Accordingly, I would affirm the lower court's suppression order.